# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| DAVID KARN and NATHAN HENDRICK, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>ALPENA WHOLESALE GROCER COMPANY d/b/a GREAT NORTH FOODS, DOUVILLE-JOHNSTON CORPORATION, ALPENA OIL COMPANY, INC., and HURON DISTRIBUTORS, INC.<br><br>Defendants. | No:_____<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE WORKER ADJUSTMENT AND RETRAINING NOTIFICATION ACT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs David Karn and Nathan Hendrick ("Plaintiffs"), individually and on behalf of all others similarly situated, by their attorneys, hereby allege the following based upon information and belief, and upon the investigation by their counsel:

## NATURE OF THE CLAIM

1. This is a class action on behalf of all former employees of Alpena Wholesale Grocer Company d/b/a Great North Foods (hereinafter "Great North Foods") and/or Douville-Johnston Corporation and/or Alpena Oil Company, Inc., and/or Huron Distributors, Inc. (all four defendants collectively referenced as the "Douville-Johnston Defendants") who were terminated without cause beginning on or about August 9, 2018 from the Douville-Johnston Defendants'

business located in Alpena, Michigan (the "Plant Closing") in violation of the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 *et seq*. ("WARN Act").

2. Great North Foods is a wholesale grocery company that has been operating out of Alpena, Michigan, for more than eighty-five (85) years, distributing and selling food and grocery products to convenience stores and grocery stores throughout Michigan, Wisconsin, Illinois, Indiana, and Ohio. For months prior to the Plant Closing, the Douville-Johnston Defendants were aware of significant financial problems at the Alpena plant. Indeed, representatives of creditors had multiple times informed the Douville-Johnston Defendants that further extensions of lines of credit to the business would not occur, necessitating infusions of capital from the owners and/or investors of the business. But due to the Douville-Johnston Defendants' refusal to correct the financial problems at the business, and failure to keep up to date on the financial books for the business, the financial situation of Great North Foods continued to worsen. As a result, the Douville-Johnston Defendants and Great North Foods finally made the decision to initiate a Plant Closing for all of Great North Foods.

3. On August 8, 2018, Great North Foods informed certain, select employees at their Alpena plant that Great North Foods would be closing. On August 9, 2018, a notice was issued announcing that Great North Foods would be closing its business effective September 14, 2018. Throughout the following weeks after the announcement, targeted layoffs would occur with continued distribution in limited instances to allow for the wrap up of business. A copy of said notice provided by Great North Foods President Jim Kent is attached hereto as Exhibit 1. At the time of the announcement of the Plant Closing, more than eighty-six (86) people worked at Great North Foods, and all of them would lose their jobs as a result of the Plant Closing. [1] The

---

[1] A news article on August 10, 2018 confirmed that approximately eighty-six (86) employees would lose their jobs. For convenience, that article can be located online at:

Douville-Johnston Defendants and Great North Foods failed to provide to the terminated employees sixty (60) days' written notice of the Plant Closing, in violation of the WARN Act.

4.      The Douville-Johnston Defendants and Great North Foods were aware of the financial problems that precipitated the Plant Closing for several months before announcing the Plant Closing, and these financial problems were anything but unforeseeable.

5.      Accordingly, Plaintiffs, on behalf of themselves and some eighty-six (86) similarly situated former employees of Great North Foods and/or the Douville-Johnston Defendant, seek to recover sixty (60) days' wages and employee benefits from the Douville-Johnston Defendants and Great North Foods pursuant to 29 U.S.C. § 2104.

## JURISDICTION AND VENUE

6.      The federal law claim asserted herein arises under the WARN Act, codified at 29 U.S.C. § 2101 *et seq*.

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 29 U.S.C. § 2104(a)(5).

8.      This Court has jurisdiction over each defendant named herein because each defendant has sufficient minimum contacts with this District to render exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

## THE PARTIES

9.      Plaintiff David Karn was employed by Great North Foods in Alpena, Michigan for more than nineteen (19) years up until informed of his termination on or around August 8, 2018. He was a Retail Counselor for the company, and was responsible for the management of a

---

http://www.truenorthradionetwork.com/index.php/2018/08/10/great-north-foods-closing-doors-after-88-years-in-alpena/ . Last access on September 12, 2018.

territory consisting of eighty (80) stores and nearly Three Hundred Thousand Dollars ($300,000.00) of sales per week.

10. Plaintiff Nathan Hendrick was employed by Great North Foods in Alpena, Michigan for nearly nineteen (19) years until informed of his termination on or around August 8, 2018. He stayed on for approximately three (3) to four (4) weeks before ceasing employment to assist with the Plant Closing. He was the General Manager and head HBC Program Director, and was also in charge of Store Engineering.

11. Defendant Alpena Wholesale Grocer Company d/b/a Great North Foods is incorporated under the laws of the State of Michigan and based in Alpena, Michigan. Its Resident Agent is James E. Johnston, with a contact address at the plant that was closed, located at 170 N. Industrial Hwy, Alpena, MI 49707.

12. Defendant Douville-Johnston Corporation is a parent corporation for Alpena Wholesale Grocer Company d/b/a Great North Foods. Douville-Johnston Corporation is organized under the laws of the State of Michigan, and based in Alpena, Michigan. Its Resident Agent is Jere D. Johnston, with a contact address located at 235 Water Street, Alpena, MI 49707.

13. Defendant Alpena Oil Company, Inc., is a subsidiary of Douville-Johnston Corporation. Alpena Oil Company, Inc., is organized under the laws of the State of Michigan, and based in Alpena, Michigan. Its Resident Agent is also Jere. D. Johnston, with a contact address located at 235 Water Street, Alpena, MI 49707.

14. Defendant Huron Distributors, Inc., is a subsidiary corporation for Douville-Johnston Corporation. Huron Distributors, Inc., is organized under the laws of the State of Michigan, and based in Alpena, Michigan. Its Resident Agent is James E. Johnston, with a contact address located at 509 Cavanaugh Street, Alpena, MI 49707.

**FURTHER SUBSTANTIVE ALLEGATIONS**

*The Background of Great North Foods and the Douville-Johnston Defendants*

15.     Great North Foods is a wholesale grocery company that until recently serviced more than six hundred (600) retail locations throughout Michigan, Wisconsin, Illinois, Indiana, and Ohio. Great North Foods was founded by the Douville Family of Alpena, Michigan, when the Douville Bakery Company of Alpena purchased the National Grocery Company of Alpena back in 1930, combining the two companies. The Douville Bakery Company changed the business name to the Alpena Wholesale Grocer that same year in 1930, and subsequently changed the formal corporation name to the Alpena Wholesale Grocer Company, which it remains formally titled to this day. In 1992, the Alpena Wholesale Grocer Company adopted several changes, which included a change to its commonly used name, adopting the d/b/a "Great North Foods" and "Great North Foods, Inc." However, the corporate entity has remained in existence since the 1930s when it was originally purchased and combined with the Douville Bakery Company.

16.     The Douville Bakery Company has also remained in corporate existence in one form or another since its purchase of the entity that became Great North Foods. This was, and continues to be a closely held, family run company that for more than eighty (80) years has been owned and operated by the Douville and Johnston families of Alpena, Michigan. In 1968, the Douville Bakery Company's formal corporate entity changed its name to reflect the closely held nature of the family business, and adopted the formal name of the Douville-Johnston Corporation. It retains this moniker to this day.

17.     The Douville-Johnston Corporation acts as the principal and parent corporate entity for the Douville-Johnston family. It has had numerous businesses over the decades that

5

have operated as additional, combined, subsidiary, or combined portions of the Douville-Johnston family business. It has operated directly or as subsidiaries the Loujon Manufacturing Company, the Magnaloy Coupling Company (a magnesium flex-drive coupling and fluid power component manufacturing company), the Country Cousins Shop of Alpena (a clothing shop), and Huron Distributors, Inc. (an Anheuser-Busch alcohol distributor in Michigan), all businesses owned and operated by members of the Douville-Johnston family. This is in addition to Great North Foods, and the Alpena Oil Company, Inc., which have separate corporate entities but are direct subsidiaries owned and operated by the Douville-Johnston family through the Douville-Johnston Corporation.

18. Alpena Oil Company, Inc., has remained in corporate existence in Michigan since 1926. Originally entitled the Heath Oil Company, the company name was changed to the Alpena Oil Company, Inc., in 1930, when it was purchased by the Douville-Johnston family through what is now known as the Douville-Johnston Corporation. Since that time, the Alpena Oil Company, Inc., has operated gas stations, convenience stores, and small grocery markets throughout Michigan. This presently includes more than twenty-one (21) such business sites in the following cities throughout Michigan: Alpena, Petoskey, Boyne City, Oscoda, Mackinac City, Onaway, Kalkaska, Harrisville, Charlevoix, Mio, Cheboygan, Indian River, Hubbard Lake, Alanson, and St. Helen. The Alpena Oil Company, Inc., openly proclaims its affiliation with Huron Distributors, Inc., Great North Foods, the Magnaloy Coupling Company, and the Douville-Johnston Corporation. The Alpena Oil Company, Inc., also owns and operates several grocery stores known under the d/b/a of "Louie's Fresh Market", which contain deli, butcher, and grocery products for retail sale. Said groceries were named in honor of a past Douville-

Johnston family patriarch, Louie Douville, who drastically expanded the Douville-Johnston family businesses throughout the 20th Century.

19. Defendant Huron Distributors, Inc., is an Anheuser-Busch alcohol distributor throughout the State of Michigan. Several members of the Douville-Johnston family act as the owners, officers, and/or directors of the corporation. It acts in the business of distributing alcohol, often in conjunction with the same grocery customers that Great North Foods distributes groceries to. It additionally distributes alcohol to various locations operated by the Alpena Oil Company, Inc., for retail sales through its various gas stations and grocery stores.

20. The Douville-Johnston Corporation coordinates the corporate efforts of its subsidiaries in Great North Foods, the Alpena Oil Company, Inc., and Huron Distributors as part of its business operations and plans. The Alpena Oil Company, Inc., purchases all of its food stuffs for its gas stations and grocery markets from Great North Foods and purchases alcohol from Huron Distributors, Inc., acting as a retail wing of the Douville-Johnston Corporation to maximize vertical profits by selling through store fronts the food stuffs and alcohol purchased and distributed by Great North Foods and Huron Distributors, Inc. Similarly, Huron Distributors, Inc., delivers and provides Anheuser-Busch products to Great North Foods customers, including the Alpena Oil Company, Inc. and its grocery stores.

21. In addition, all of the subsidiaries of the Douville-Johnston Corporation, including Great North Foods, the Alpena Oil Company, Inc., and Huron Distributors, Inc., maintain common employee insurance, benefit, and retirement plans. Alpena Oil Company, Inc., openly advertises to potential employees the benefits package provided by the Douville-Johnston Corporation insurance and benefit plans. Similarly, employees of Great North Foods are

provided with insurance, benefit, and retirement packages through plans for the Douville-Johnston Corporation, or under the alternate plan title moniker of "D-J Affiliated Group."

*Defendants' Operational Failures Preceded the Layoffs*

22. As early as January or February of 2018, it became clear to the owners, officers, and directors of Great North Foods that it was experiencing financial difficulties. Great North Foods had been in contact with its primary bankers and creditors, and received several communications declaring that Great North Foods would soon be losing its lines of credit.

23. By approximately February or March of 2018, the owners, officers, and directors of Great North Foods were informed that its lines of credit would be limited or stopped completely given the financial condition of the company.

24. In response to this problem, an approach was discussed wherein Jere D. Johnston would provide capital in a final attempt to save the financial situation of Great North Foods. Jere D. Johnston is a member of the Douville-Johnston family, an owner of the Douville-Johnston Corporation, and the Resident Agent of the Alpena Oil Company, Inc., and the Douville-Johnston Corporation.

25. Jere D. Johnston and or Douville-Johnston Corporation authorized a short-term loan of One Million Dollars ($1,000.000.00) to Great North Foods in order to attempt to get the business back on its financial footing, and demanded repayment of the funds within two months.

26. As part of this deal with Great North Foods, Ronald Baxter, a previous President of Great North Foods, was brought back in to the company in April or May of 2018 in order to begin auditing the financial state of Great North Foods. Jere. D. Johnston gave explicit instructions to the owners, officers, and directors of Great North Foods that if the short-term loan

was not paid back within the time frame given, then Great North Foods was to be closed down to minimize any further financial losses.

27. At the same time, Jere D. Johnston began exploring new potential avenues for grocery distributors that Alpena Oil Company, Inc. might use in the future at its stores in the likely event that Great North Foods closed down.

28. In approximately June of 2018, a meeting was held amongst the officers, directors, and high level staff of Great North Foods. At that meeting, the loan from Jere D. Johnston was relayed to high level staff, who were informed that the financial condition of Great North Foods was grim. There were several problems which led the grim financial situation, beyond the problems with obtaining lines of credit. It was relayed to staff that despite financial books being due back in February of 2018, many of the business's financial books going back to the previous year had not been closed and fully accounted for. Upon the closing of some of those books, it was discovered that Great North Foods had been hemorrhaging from a financial standpoint for several months going back into 2017. During the times that these financial books had not been balanced, audited, or accounted for, enormous amounts of capital had also been spent on a warehousing system of technology. Staff was warned that the financial situation was grim and that it was likely that Great North Foods might have to close.

29. On August 8, 2018, some office staff at Great North Foods were finally and conclusively informed that the business would be ceasing operations, with a wind-down period that may last through to a final closing on September 14, 2018.

30. On August 9, 2018, a formal notice from Great North Foods President Jim Kent explained to customers and employees of the planned closing within thirty-six (36) days. No

explanation was given within that notice as to the reason for the closing. Said notice was previously referenced within this Complaint as Exhibit 1.

31. Over the next four weeks or so, a staggered loss of employment occurred for eighty-six (86) employees as they were laid off and operations were wound down. As of the filing of this lawsuit, only a handful of staff and officers remain in an attempt to wind down the business and close the books.

32. At no point in time did Great North Foods, nor any of the Douville-Johnston Defendants, ever issue a proper WARN notice pursuant to 29 U.S.C. § 2104. A search of the Michigan Workforce Development Agency's public listings of such notices as of September 12, 2018, confirms that neither Great North Foods, nor the Douville-Johnston Defendants, ever issued proper notice. A copy of the public listings of WARN notifications on the State of Michigan's website is attached hereto as Exhibit 2.[2]

33. Notwithstanding that Great North Foods and the Douville-Johnston Defendants had known for months that the Plant Closing was imminent, and took time to make arrangements for other businesses owned and operated by the Douville-Johnston Defendants, Great North Foods and the Douville-Johnston Defendants failed to provide sixty (60) days' advance, written notice before terminating their employees in violation of the WARN Act.

34. Plaintiffs brings this action individually, and on behalf of all other similarly situated former employees of Great North Foods, seeking up to sixty (60) days' wages and benefits in recompense for termination without sufficient notice in violation of the WARN Act.

## SINGLE EMPLOYER ALLEGATIONS

---

[2] For ease of reference, current publications can be found online at: https://www.michigan.gov/wda/0,5303,7-304-64178_64179---,00.html . Last accessed September 12, 2018.

35. As referenced within Paragraphs 15 through 21 of this Complaint, Great North Foods and the Douville-Johnston Defendants all constitute a single employer for the purposes of this Complaint.

36. There are numerous factors that may be looked at to determine whether multiple corporate entities are a single employer for the purposes of the WARN Act. Among those are the factors set forth in the Code of Federal Regulations:

> Under existing legal rules, independent contractors and subsidiaries which are wholly or partially owned by a parent company are treated as separate employers or as part of the parent or contracting company depending on the degree of their independence from the parent. Some of the factors to be considered in making this determination are (i) common ownership, (ii) common directors and/or officers, (iii) de facto exercise of control, (iv) unity of personnel policies emanating from a common source, and (v) the dependency of operations.

20. C.F.R. § 639.3(a)(2).

37. Under any of the factors set forth to make such a determination, including the Code of Federal Regulations, Great North Foods and the Douville-Johnston Defendants constituted a single employer for the purposes of the WARN Act. The subsidiary companies of the Douville-Johnston Defendants all have common ownership through the Douville-Johnston Corporation, and the members of the Douville-Johnston family that has owned and operated these businesses as a family operation for nearly a century. The ownership, operation, directors, and officers of all companies within the Douville-Johnston Defendants have common management through the oversight and involvement of various members of the Douville-Johnston family. The Douville-Johnston family, through the Douville-Johnston Corporation and its subsidiaries within the Douville-Johnston Defendant, openly holds its companies out to the public as corporate affiliates of the same entity, and the involvement of Jere D. Johnston within Great North Foods final months shows clear de facto control of Great North Foods. The

Douville-Johnston Defendants all provide common insurance, benefits, and retirement plans through a centralized set of policies emanating from the Douville-Johnston Corporation. Lastly, the interrelated nature of the linking of customer lists, distribution of food and alcohol, through to provision at the local and retail level between Great North Foods, Alpena Oil Company, Inc., and Huron Distributing, Inc., shows an interrelated dependency of operations amongst the businesses to maximize profits across all members of the Douville-Johnston Defendants.

38. That Great North Foods alone has eighty-six (86) employees at the time of the announcement of the Plant Closing. As a single employer under the WARN Act, the Douville-Johnston Defendants combined to have more than one hundred (100) total employees at all relevant times of the Plant Closing.

## CLASS ACTION ALLEGATIONS

39. Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and 29 U.S.C. § 2104(a)(5) on behalf of themselves and all other employees of Great North Foods terminated without cause during the Plant Closing by Great North Foods and/or Douville Johnston Defendants beginning on or about August 8, 2016 ("Class Members").

40. The Class Members are so numerous that joinder of all Class Members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

41. The precise number of Class Members is believed to be eighty-six (86) at this time, though this can only be ascertained with certainty through appropriate discovery. The identity, recent address, rate of pay, and afforded employee benefits of all Class Members may be ascertained from records maintained by Great North Foods and the Douville-Johnston

Defendants, and Class Members may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in similar class actions.

42. Plaintiffs' claims are typical of the Class Members' because Plaintiffs, like all other Class Members, were the subject of Great North Foods and/or the Douville/Johnston Defendants' wrongful conduct, namely: termination without sixty (60) days' advance notice.

43. Plaintiffs will fairly and adequately protect the interests of all Class Members and have retained counsel experienced in class action litigation. Plaintiffs have no interests that conflict with those of the class identified herein.

44. Questions of law and fact common to all Class Members predominate over any questions solely affecting individual Class Members, and include:

    (a) whether the Class Members were employed by the Defendants;

    (b) whether Defendants terminated the Class Members without cause;

    (c) whether Defendants provided written notice at least sixty (60) days prior to the Class Members' termination;

    (d) whether Defendants paid sixty (60) days' wages and provided sixty (60) days' employee benefits to the Class Members in connection with their termination;

    (e) whether the Plant Closing was foreseeable; and

    (f) how to calculate the value of back pay and employee benefits pursuant to the WARN Act.

45. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Consideration of this controversy as a class action will eliminate the need for duplicative litigation, as well as the possibility of inconsistent and varying

judgments and standards of conduct for Defendants. Moreover, class action litigation is particularly appropriate in the employment context as individual Class Members may lack the financial resources necessary to prosecute discrete actions against large commercial organizations such as the Douville-Johnston Defendants, and individual recoveries may be too small to justify taking on the expenses concomitant with prosecuting individual actions.

## CLAIMS FOR RELIEF

### COUNT ONE
### For Violation of the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 *et seq*.
### [Against All Defendants]

46. Plaintiffs incorporate by reference each and every preceding paragraph as though fully set forth herein.

47. This Count is asserted by Plaintiffs on behalf of themselves and all Class Members, against Great North Foods and the Douville-Johnston Defendants, and is based upon the WARN Act, codified at 29 U.S.C. § 2101 *et seq*. and its implementing regulations, codified at 20 C.F.R. § 639 *et seq*.

48. Great North Foods and the Douville-Johnston Defendants are part of a single business enterprise that is, and at all relevant times has been, an "employer" as that term is defined by the WARN Act and implementing regulations, employing more than 100 employees (exclusive of part-time employees) who, in the aggregate, work at least 4,000 hours per week (exclusive of overtime hours).

49. Plaintiffs and all other Class Members were "affected employees" of Great North Foods and the Douville-Johnston Defendants, as that term is defined by the WARN Act and implementing regulations.

50. Plaintiffs and all other Class Members were terminated by Great North Foods and the Douville-Johnston Defendants. Great North Foods and the Douville-Johnston Defendants ordered a "mass layoff" or "plant closing," as those terms are defined by the WARN Act and implementing regulations, that occurred on or about August 8th or 9th, 2018.

51. Any mass layoff by Great North Foods and the Douville-Johnston Defendants affected more than eighty-six (86) and/or affected more than fifty (50) and more than one-third (33%) of the employees at the Great North Foods plant within a thirty (30) day period, or alternatively constituted an aggregate employment loss during a staggered ninety (90) day period as provided pursuant to 29 U.S.C. § 2102(d).

52. The Plant Closing effectuated by Great North Foods and the Douville-Johnston Defendants affected fifty (50) or more employees excluding any part-time employees within a thirty (30) day period, and/or within an aggregate ninety (90) day period.

53. Plaintiffs and all other Class Members were terminated without cause.

54. The provisions of the WARN Act required Great North Foods and the Douville-Johnston Defendants to give sixty (60) days' advance written notice of termination to Plaintiffs and all other Class Members.

55. Great North Foods and the Douville-Johnston Defendants failed to give sixty (60) days' advance written notice of termination to Plaintiffs, all other Class Members, and the chief elected official of the local government within which the plant closings or mass layoff occurred in violation of the WARN Act, and failed to publish said notice according to the WARN Act.

56. Great North Foods and the Douville-Johnston Defendants failed to pay Plaintiffs and each of the Class Members sixty (60) days' wages, provide Plaintiffs and each of the Class Members with sixty (60) days' employee benefits, and give Plaintiffs and each of the Class

Members all other forms of compensation to which they were entitled, following the Plant Closings or mass layoff, in violation of the WARN Act.

57. Plaintiffs and all other Class Members are "affected employees," as that term is defined by the WARN Act and its implementing regulations, who did not receive notice either directly or through an appropriate representative.

58. Great North Foods and the Douville-Johnston Defendants are subject to a civil penalty of not more than five hundred dollars ($500) for each day of its violation as to a unit of local government.

59. Plaintiffs, on behalf of themselves and all Class Members, will incur attorneys' fees in connection with the prosecution of this action, and are entitled to an award of reasonable attorneys' fees, costs, and disbursements pursuant to the WARN Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

(a) Declaring this action to be a proper class action pursuant to Fed. R Civ. R. 23;

(b) Designation of Plaintiffs as Class Representatives;

(c) Designation of Anderson, Agostino & Keller, P.C. as Class Counsel;

(d) Restitution equal to the lost pay and employee benefits to which Plaintiffs and all Class Members were entitled under the WARN Act;

(e) An award of reasonable attorneys' fees, costs, and disbursements pursuant to the WARN Act and other applicable law;

(f) Pre- and post-judgment interest; and

(g) Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY

Plaintiffs hereby respectfully demand a trial by jury for all claims so triable.

>Respectfully submitted,
>
>/s/ Michael P. Misch
>Michael P. Misch (27970-71)
>**Anderson, Agostino & Keller**
>131 South Taylor Street
>South Bend, Indiana 46601
>Tel: (574) 288-1510
>Fax: (574) 288-1650
>
>*Attorneys for Plaintiffs*